# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

THE AMERICAN HOSPITAL ASSOCIATION, THE MAINE HOSPITAL ASSOCIATION, ST. MARY'S REGIONAL MEDICAL CENTER, NATHAN LITTAUER HOSPITAL & NURSING HOME, UNITY MEDICAL CENTER, and DALLAS COUNTY MEDICAL CENTER,

*Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., Secretary of the U.S. Department of Health and Human Services, THOMAS J. ENGELS, Administrator, Health Resources and Services Administration, THE HEALTH RESOURCES AND SERVICES ADMINISTRATION, THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and THE UNITED STATES OF AMERICA,

*Defendants*.

Case No. 2:25-cv-00600-JAW

**PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA
MOTION TO INTERVENE**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

LEGAL STANDARD ..................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.     PhRMA Is Entitled To Intervene As Of Right..................................................................... 2

II.    In The Alternative, PhRMA Should Be Permitted To Intervene Under Rule 24(b)........... 6

CONCLUSION ............................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) ............................................................................................................... 1

*Conservation L. Found. of New England, Inc. v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) .......................................................................................... 2, 4, 5, 6

*Daggett v. Comm'n on Governmental Ethics and Election Pracs.*,
   172 F.3d 104 (1st Cir. 1999) ............................................................................................ 2, 4, 5

*Dinner Table Action v. Schneider*,
   No. 1:24-CV-00430-KFW, 2025 WL 604885 (D. Me. Feb. 25, 2025) ..................................... 7

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*,
   197 F.3d 560 (1st Cir. 1999) ..................................................................................................... 4

*McDonough v. City of Portland*,
   2015 WL 3755289 (D. Me. June 6, 2015) ................................................................................ 5

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*,
   No. 1:20-CV-00468-NT, 2021 WL 1135019 (D. Me. Mar. 23, 2021) ...................................... 2

*Old Orchard Provisions, LLC v. Town of Old Orchard Beach*,
   No. 2:23-cv-272, 2023 WL 8540917 (D. Me. Dec. 11, 2023) .............................................. 5, 6

*Portland Cellular P'ship v. Inhabitants of the Town of Cape Elizabeth*,
   No. 2:14-cv-274, 2015 WL 12990147 (D. Me. Feb. 3, 2015) .................................................. 4

*Pub. Serv. Co. of N.H. v. Patch*,
   136 F.3d 197 (1st Cir. 1998) ..................................................................................................... 5

**Rules**

Fed. R. Civ. P. 24(b) ................................................................................................................. 2, 6

Fed. R. Civ. P. 24(a)(2) ......................................................................................................... 1, 4, 5

**Other Authority**

*340B Program Notice: Application Process for the 340B Rebate Model Pilot
   Program; Correction*, 90 Fed. Reg. 38,165 (Aug. 7, 2025) .................................................. 3, 4

## INTRODUCTION

Pharmaceutical Research and Manufacturers of America (PhRMA) moves to intervene as a defendant. PhRMA is an association that represents the Nation's leading biopharmaceutical research companies. Its members include eight of the nine companies whose plans were selected by the Health Resources & Services Administration (HRSA) for participation in the 340B Rebate Model Pilot Program (Pilot Program). *See* Ex. 1 (Stansel Decl.) ¶ 13. Plaintiffs have asked this Court to decide whether the agency's action creating that Pilot Program is lawful, and whether the Pilot Program may proceed. Because PhRMA and its members have protectable interests that will be directly impacted by this Court's answers to those questions, PhRMA is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, PhRMA respectfully seeks permissive intervention under Rule 24(b)(1).[1]

## LEGAL STANDARD

A party is entitled to intervene as of right in litigation if: (1) the motion to intervene is timely filed; (2) the proposed intervenor has "an interest relating to" the subject matter of the action; (3) the proposed intervenor is "so situated that disposing of the action may, as a practical matter impair or impede [its] ability to protect [that] interest;" and (4) the proposed intervenor's interests are not "adequately represent[ed]" by the "existing parties" to the suit. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022). Even if a party is not entitled to intervene as a matter of right, permissive intervention may be granted when the proposed intervenor has "a claim or defense that shares with the main action a common

---

[1] PhRMA has sought all parties' position on this motion. At the time of filing, Defendants had not yet responded to the request for their position. Plaintiffs advised that they anticipate opposing the motion. PhRMA respectfully requests that any opposition to its motion to intervene be due by December 15, 2025, in line with the deadlines set for the motions to intervene by AstraZeneca and AbbVie.

question of law or fact," and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

## ARGUMENT

### I. PhRMA Is Entitled To Intervene As Of Right.

PhRMA is entitled to intervene in this litigation because its motion is timely; PhRMA and its members have significant interests in the case; those interests will be affected by the outcome; and the current parties do not adequately represent PhRMA's interests.

*First*, PhRMA's motion is timely. This case is only nine days old. Plaintiffs filed their complaint and motion for temporary restraining order on December 1, and PhRMA is seeking intervention—alongside the other proposed intervenors—on the timeline ordered by the Court. *See Daggett v. Comm'n on Governmental Ethics and Election Pracs.*, 172 F.3d 104, 109 (1st Cir. 1999) (intervention motion filed within two weeks of complaint "easily met" Rule 24's timeliness requirement); *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, No. 1:20-CV-00468-NT, 2021 WL 1135019, at *3 (D. Me. Mar. 23, 2021) (intervention motion timely when filed two days after briefing schedule was set). No existing party would be prejudiced by PhRMA's intervention at this early stage, but PhRMA and its members would—for the reasons described below—be prejudiced if it cannot intervene at this time.

*Second*, PhRMA and its members have significant, protectable interests in this case. Those interests "bear a sufficiently close relationship to the dispute between the original litigants." *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992) (internal quotation marks omitted).

If Plaintiffs prevail, the Pilot Program will be halted—either temporarily or permanently. And PhRMA and its members have a direct interest in that Pilot Program. A key impetus for the Pilot Program was to ensure that manufacturers—including PhRMA's members—have a way to

simultaneously comply with their obligations under 340B and the Medicare Drug Price Negotiation Program come January 1, when manufacturers' obligations to offer the "maximum fair price" (MFP) kick in under the latter Program. *340B Program Notice: Application Process for the 340B Rebate Model Pilot Program; Correction*, 90 Fed. Reg. 38,165, 38,166 (Aug. 7, 2025). Absent the Pilot Program, those manufacturers, including PhRMA members, will not be able to deduplicate their MFP and 340B discounts, risking federal enforcement actions, civil penalties, costly duplicate discounts connected to their MFP obligations, and other harms. Ex. 2 (Paluzzi Decl.) ¶¶ 21, 24; Ex. 1 (Stansel Decl.) ¶ 18.

For example, PhRMA member Johnson & Johnson (J&J) participates in the 340B Program and must offer MFP refunds on two of its drugs, STELARA® and XARELTO®, starting on January 1. *See* Ex. 2 (Paluzzi Decl.) ¶¶ 4, 7. "In part to help meet its deduplication responsibilities, J&J planned to adopt a rebate model of its own initiative" in 2024. *Id.* ¶ 12. When HRSA refused to permit J&J to do so, J&J sued HRSA, in litigation that remains pending in the United States Court of Appeals for the D.C. Circuit. *Id.* § 13. HRSA later selected J&J for the Pilot Program. *Id.* ¶ 14. If Plaintiffs succeed in stopping the Pilot Program, even temporarily, J&J "estimates that it would be required to pay over a hundred million dollars in improper MFP refunds … on medications purchased at the 340B price." *Id.* ¶ 21. In addition, if J&J is prevented from implementing its rebate program, it will not be able to recoup the "substantial time and resources" it has invested since 2024 in developing and preparing for that program. *Id.* ¶ 24.

Other PhRMA members have the same or materially similar interests in the Pilot Program and, therefore, in this litigation. *See, e.g.*, Dkt. 39-1 (AstraZeneca Decl.) ¶¶ 23; Ex. 1 (Stansel Decl.) ¶¶ 13, 18.

Finally, the Pilot Program will "also … facilitate other aims[,]" including the gathering of information about rebate models "to inform [HRSA's] consideration of any future 340B rebate models consistent with the 340B statute and the Administration's goals." 90 Fed. Reg. at 38,165. PhRMA and its members have a direct stake in these goals of the Pilot Program too. PhRMA members—those in the Pilot Program and those not—have a strong interest in HRSA's ability to gather real-world information in a manner that will allow it to properly assess whether to expand the use of rebate models in the future. *See* Ex. 1 (Stansel Decl.) ¶¶ 19-21. Blocking the Pilot Program would significantly compromise that examination.

All these interests justify PhRMA's intervention. *See Daggett*, 172 F.3d at 110 (finding a sufficient interest where the underlying proceeding threatened intervenor's ability to participate in a government program); *see also Mosbacher*, 966 F.2d at 43; *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 566 (1st Cir. 1999) (holding that trade association had a direct and concrete interest sufficient for intervention where its "members were subject to the very … regulation challenged by plaintiffs").

*Third*, for the reasons already given, this litigation directly impacts the interests of PhRMA and its members. *See Portland Cellular P'ship v. Inhabitants of the Town of Cape Elizabeth*, No. 2:14-cv-274, 2015 WL 12990147, at *2 (D. Me. Feb. 3, 2015) (when intervenor's interests are related, "[t]he third Rule 24(a)(2) factor requires little discussion"). "'[E]ven a small threat' that [a proposed intervenor's] interests could be jeopardized by the outcome of [a] case is 'ample reason for finding that [its] ability to protect [its] interest may be adversely affected.'" *Old Orchard Provisions, LLC v. Town of Old Orchard Beach*, No. 2:23-cv-272, 2023 WL 8540917, at *4 (D. Me. Dec. 11, 2023) (quoting *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000)). And as just described, the threat here is large, not small. If Plaintiffs obtain their

4

requested relief (either temporarily or permanently), PhRMA's members' interests will be severely and adversely affected. *See supra*, at 2-4; *see also Daggett*, 172 F.3d at 110.

*Fourth*, PhRMA has shown that the representation of the existing parties "may be inadequate." *Mosbacher*, 966 F.2d 39, 43-44; *see also* Fed. R. Civ. P. 24(a)(2) "An applicant for intervention need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate" to rebut the presumption that the government's representation is adequate to defend an agency action. *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998). Here, PhRMA's "interests are sufficiently different in kind or degree from those of" HRSA, *McDonough v. City of Portland*, 2015 WL 3755289, at *3 (D. Me. June 6, 2015), and PhRMA has made "a strong affirmative showing that the agency ... is not fairly representing its interests," *Patch*, 136 F.3d at 207 (internal quotation marks omitted) PhRMA's members have an undoubtedly concrete financial interest in this litigation – indeed, they have billions of dollars at stake. *See, e.g., id.* (holding that proposed intervenor's interests "are sufficiently different from Portland's and that Portland's representation may be inadequate because Portland must account for a spectrum of governmental interests far broader than the discrete commercial interests [the proposed intervenor] seeks to protect"); *see* Ex. 1 (Stansel Decl.) ¶ 18. And PhRMA's members have already expended significant sums to prepare to initiate the Pilot Program on January 1, when the selected manufacturers' MFP obligations commence. *See id.* ¶ 16. HRSA, of course, seeks to defend the lawfulness of its Pilot Program, but it lacks these same monetary and timing-specific interests.

Separate and apart from this divergence, PhRMA satisfies this factor, because PhRMA members Novartis, Bristol Myers Squibb, Eli Lilly and Company, Sanofi, and J&J are currently adverse to the government in litigation about HRSA's claimed authority to decide whether and

5

when manufacturers may use rebates rather than up-front discounts to effectuate the 340B price for all of a manufacturer's drugs, not just those in the Pilot Program. *See Novartis et al. v. Kennedy*, No. 25-5177 (D.C. Cir.). As that pending case highlights, HRSA and these PhRMA members have divergent views about the role of rebates (and the role of HRSA in authorizing rebates) under the 340B statute. Given that circumstance, it cannot be assumed "that [the government] will zealously defend" PhRMA's interests or those of its members, *Old Orchard Provisions*, 2023 WL 8540917, at *4. Moreover, the adversity between HRSA and PhRMA members in related litigation underscores the inherent tension that arises where "an agency seeks to protect both the public interest and the interest of a private intervenor." *Mosbacher*, 966 F.2d at 44–45 (describing such a task as "on its face impossible" (quoting *Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir. 1977))).

Because PhRMA satisfies all the requirements for intervention as of right, this Court should grant its motion to intervene under Rule 24(a).

### II.      In The Alternative, PhRMA Should Be Permitted To Intervene Under Rule 24(b).

Alternatively, the Court should grant PhRMA permissive intervention under Rule 24(b). PhRMA's defenses share common questions of law and fact with this action, PhRMA will help fully develop the facts of this case, and PhRMA's intervention will not unduly delay or prejudice the litigation.

PhRMA "seek[s] to intervene to defend the" legality of the challenged agency action, "so [it] clearly ha[s] a 'defense that shares with the main action a common question of law or fact.'" *Dinner Table Action v. Schneider*, No. 1:24-CV-00430-KFW, 2025 WL 604885, at *2 (D. Me. Feb. 25, 2025) (quoting Fed. R. Civ. P. R. 24(b)(1)(B)). And because PhRMA's motion comes at the very start of the case, its intervention, especially alongside the other proposed intervenors,

6

would not cause undue delay or prejudice the original parties. Further, as already discussed, PhRMA's and its members' substantial interests in the Pilot Program are threatened by Plaintiffs' suit, and no existing party can adequately represent those interests. Finally, and perhaps most important, PhRMA and its members will provide facts and perspective on the operation of the 340B Program, its intersection with the Medicare Drug Price Negotiation Program, and the necessity of the Pilot Program that will aid the Court in assessing the merits, as well as the reasons why Plaintiffs' request for extraordinary preliminary relief should be denied.

## CONCLUSION

For the forgoing reasons, the Court should grant PhRMA's motion to intervene as of right or, in the alternative, for permissive intervention.

Dated: December 10, 2025

Respectfully submitted,
*/s/ Corin R. Swift*

Corin R. Swift (ME Bar No. 009805)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5381
Email: corin.swift@sidley.com

Kwaku A. Akowuah (*pro hac vice* forthcoming)
Madeleine Joseph (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Email: kakowuah@sidley.com

Meenakshi Datta (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Email: mdatta@sidley.com

*Counsel for PhRMA*

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which sent notification of such filing to all counsel of record by electronic means.

*/s/ Corin R. Swift*
Corin R. Swift