UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| THE AMERICAN HOSPITAL ASSOCIATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR. Secretary of the U.S. Department of Health and Human Services, et al.,<br><br>Defendants. | Case No. 2:25-cv-00600-JAW<br><br>**PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO INTERVENE FILED BY ABBVIE INC. AND PHARMACYCLICS LLC (ECF DOC. 36), ASTRAZENECA PHARMACEUTICALS LP (ECF DOC. 39), PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA (ECF DOC. 45), AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. AND NOVO NORDISK INC. (ECF DOC. 50)** |

**PRELIMINARY STATEMENT**

This is a straightforward administrative law case. Plaintiffs allege that the federal government's 340B Rebate Model Pilot Program (the "Rebate Program") failed to comply with several basic Administrative Procedure Act requirements. Nevertheless, four drug companies and one trade association ("Movants") seek to intervene.[1] The United States government does not need drug companies to defend its record, reasoning, and reasonableness before this Court. Movants have no right to intervene in this matter, and this Court should decline to permit Movants to intervene given the needlessness of their participation and the inevitable delay it will cause.

Intervention is especially unwarranted here given the limited scope of APA claims. "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power*

---

[1] *See* ECF Docs. 36 ("AbbVie Mot."); 39 ("AZ Mot."); 45 ("PhRMA Mot."); 50 ("NN BI Mot."). AstraZeneca Pharmaceuticals LP ("AZ") fully incorporated AbbVie's Motion into its own. AZ Mot. 1.

1

*& Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).[2] Only the government, not any private party, will have to present its agency record. *See Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) ("This is not a case where the complaint was framed so as to require an evidentiary determination and where the would-be intervenors had information that could only be presented by their participation as parties."). Movants' post-hoc justifications and policy arguments about the Rebate Program are irrelevant to the legal issues at stake. And Movants have failed to establish either a direct, non-contingent stake of their own, or that the government cannot adequately represent any interests Movants have.

For these reasons, Movants cannot satisfy the requirements of Federal Rule of Civil Procedure 24. This Court should not open the floodgates to five new parties that will bog down this litigation. Plaintiffs continue to consent to Movants filing *amicus* briefs if they so choose, but these Motions to Intervene should collectively be denied. *See Daggett v. Comm'n on Gov't Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999) ("There may be instances where the amicus brief would not do the job, but once again applicants have made no showing on this point.").

## ARGUMENT

### I. Movants Have No Right To Intervene Under Rule 24(a)(2).

A party seeking to intervene as of right must demonstrate: 1) "a concrete interest in the pending action," 2) "a realistic threat that the resolution of the pending action will hinder its ability to effectuate that interest," 3) "the absence of adequate representation by any existing party," and 4) "the timeliness of its motion." *SEC v. LBRY, Inc.*, 26 F.4th 96, 99 (1st Cir. 2022) (cleaned up). "It is black letter law that a failure to satisfy any one of these four requirements sounds the death knell for a motion to intervene as of right." *T-Mobile Ne., LLC v. Town of Barnstable*, 969 F.3d 33,

---

[2] *See also Murphy v. Comm'r of Internal Revenue*, 469 F.3d 27, 31 (1st Cir. 2006); *Sierra Club v. U.S. Army Corps of Eng'rs*, 2023 WL 6260728, at *4 (D. Me. Sept. 26, 2023).

39 (1st Cir. 2020). Three bells toll for Movants: no concrete interest, no practical threat to an interest, and abundantly adequate representation by the federal government.[3]

**No Concrete Interest in this Action or Realistic Threat to a Concrete Interest.** Movants assert that their economic interests justify intervention here. But those asserted interests are highly contingent. Because an intervenor's "interest must be direct, not contingent," Movants cannot intervene as a matter of right. *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989).

Movants contend that the Rebate Program is the only way to avoid either paying duplicate discounts under the Inflation Reduction Act ("IRA") and 340B Program, or risk penalties for not complying with the statutes. AbbVie Mot. 5–6; AZ Mot. 3; PhRMA Mot. 3; NN BI Mot. 5. That is untrue. *First*, one of the ten drug companies participating in the Rebate Program, Novartis, was not approved by HRSA to start for the drug Entresto until April 1, 2026, even though Entresto is subject to IRA discounts on January 1, 2026. Novartis will therefore administer both IRA and 340B discounts without the Rebate Program, and Movants could do the same.[4] *Second*, Movants' argument hinges on the assumption that covered entities will improperly attempt to claim both 340B and IRA discounts, but they offer no actual evidence that this will occur. *Third*, Movants assume that they will be subject to civil monetary penalties if they do not comply with the IRA/340B discount requirements while they work through the first days of the IRA's administration, but the government has never said it will immediately impose such penalties. If the Rebate Program is set aside because of Defendants' own failure to comply with the APA, they may well choose not to penalize drug companies starting January 1, 2026. *See Cigar Ass'n of Am. v. FDA*, 480 F. Supp. 3d 256, 270 (D.D.C. 2020) (noting that post-effective date grace periods to

---

[3] Plaintiffs do not contest that the many Motions to Intervene were timely filed.

[4] Defendants nowhere addressed comments from Plaintiffs and others that Movants' deduplication goal could be accomplished in other, less-costly ways. *E.g.*, ECF Doc. 1 at 33–34, ECF Doc. 3 at 15.

allow compliance with new rules are "a classic and lawful exercise of agency enforcement discretion").[5]

Together, this is "a case in which these would-be intervenors root their professed economic interest in an as yet unrealized expectancy" of government penalties or discounts lost to unproven non-compliance. *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205–06 (1st Cir. 1998). At this time, "numerous market variables" make it "anybody's guess" whether, when, and how Movants' economic interests actually will be harmed. *Id*. at 206. Consequently, their asserted interests here are "fatally contingent." *Id*.[6]

**Adequate Government Representation.** A proposed intervenor faces a heightened burden when seeking to intervene alongside the government. *E.g.*, *Patch*, 136 F.3d at 207; *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021). Movants therefore must make "a strong affirmative showing that the [government] agency (or its members) is not fairly representing [their] interests." *Victim Rts. L. Ctr.*, 988 F.3d at 561 (quoting *Patch*, 136 F.3d at 207).[7] Movants come

---

[5] While Movants have submitted that "Plaintiffs' lawsuit, if successful, will prevent [them] from participating in the [Rebate] Program," *e.g.*, AbbVie Mot. 5, Movants have told other federal courts that at least eleven states' laws (including Maine's) independently prohibit drug companies from participating in the Rebate Program because they bar collection of certain claims data, prohibit certain rebate programs, or both. For example, in a filing made *after* its Motion, AbbVie told another district court that "AbbVie needs claims data to implement the Rebate Program," but "South Dakota's S.B. 154 [] prohibits AbbVie from requiring covered entities and contract pharmacies to 'submit any claim or utilization data.'" *AbbVie, Inc. v. Jackley*, No. 3:25-cv-03006, ECF Doc. 60 at 1, 3 (D.S.D. Dec. 12, 2025) (quoting SD S.B. 154); *e.g.*, *PhRMA v. Frey*, No. 1:25-cv-00469, ECF Doc. 33 at 13 (D. Me. Oct. 28, 2025); *AZ Pharms., LP v. Neronha*, No. 1:25-cv-00624, ECF Doc. 1 ¶ 102 (D.R.I. Nov. 25, 2025). Plaintiff American Hospital Association has submitted *amicus curiae* briefs disagreeing with Movants' interpretations of the state statutes at issue. The Court, however, need not consider the merits of these state law arguments to find that the Movants' interests are contingent here: because Movants also have represented to this Court that "the rebate model must operate uniformly nationwide, and that it cannot be tailored on a state-by-state basis," *e.g.*, ECF Doc. 39-1 at ¶ 26, Movants' filings imply that they must run the table in their other litigations before they can participate in any Rebate Program.

[6] Movants fail to satisfy the third element—whether the "dispos[ition] of the action may as a practical matter impair or impede the movant's ability to protect its interest," Fed. R. Civ. P. 24(a)(2)—for an additional reason. Movants have known since 2023 that their drugs would be subject to the IRA's requirements starting on January 1, 2026, meaning Movants had *more than two years* to plan for de-duplication *without* a Rebate Program (which was not approved until October 2025). "[A]s a practical matter," this demonstrates why this case will not "impair or impede" Movants' asserted interest in the way they insist. Fed. R. Civ. P. 24(a)(2).

[7] NN and BI acknowledge this longstanding First Circuit presumption of adequate government representation, but argue that the Supreme Court has cast doubt on it. NN BI Mot. 6–7. In so doing, they grossly misread *Berger v. N.C.*

4

nowhere close to meeting this high standard. The Court can "start—and end—with th[is] requirement." *T. Mobile Ne.*, 969 F.3d at 39.

Movants cannot dispute that they share the same objective as the government. All seek to defend the Rebate Program and ensure it goes into effect on January 1, 2026. *E.g.*, *id*. at 39 (representation adequate where proposed intervenor shared defendant's "same ultimate goal"); *LBRY*, 26 F.4th at 99 (same where proposed intervenor "concedes that it shares [defendant's] litigation objective"); *see* AbbVie Mot. 1; AZ Mot. 3; PhRMA Mot. 5; NN BI Mot. 1 (all conceding same objectives as government). Movants stress that they have distinct economic interests in the implementation of the Rebate Program as a means of distinguishing their interest from the government's, but they never explain *why* the government would not vigorously defend its own program absent a profit motive. Movants' failure to put any "meat on the bones," *T-Mobile Ne.*, 969 F.3d at 40, or "produce some tangible basis to support a claim of purported inadequacy" dooms their attempts at intervention, *Victim Rts. L. Ctr.*, 988 F.3d at 561 (quoting *Patch*, 136 F.3d at 207).[8]

At best, Movants argue that Defendants will not adequately defend their interests because the government must account for public policy considerations as well as their economic interests. But the First Circuit has repeatedly rejected that argument. *See Daggett*, 172 F.3d at 112 ("The

---

*State Conference of the NAACP*, 597 U.S. 179 (2022). *Berger* concerned *government officials empowered by statute* to defend the state's laws who sought to intervene alongside another government official. *Id*. at 196–97. The Supreme Court expressly did "not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Id.* at 197. Nor did it hold that a proposed intervenor's interests must be identical to a party's to raise a presumption, as NN and BI claim. NN BI Mot. 6–7. The Court's discussion of similarity of interests concerned a separate "class[] of case" than cases "where a member of the public seeks to intervene to defend a law alongside the government." *Berger*, 597 U.S. at 196–97.

[8] Some Movants cite *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006), which exclusively involved *private* parties, for the proposition that different interests can overcome "any presumption" of adequate representation. NN BI Mot. 8. But the First Circuit's subsequent cases involving efforts to intervene *alongside a government party* have made clear that a difference in interests is insufficient. *E.g.*, *Victim Rts. L. Ctr.*, 988 F.3d at 562; *infra* pp. 5–6.

5

general notion that the [government] represents 'broader' interests at some abstract level is not enough."); *Mass. Food Ass'n*, 197 F.3d at 567 (rejecting argument that government cannot adequately represent the interests of an industry member it also regulates).[9] Merely identifying different reasons for supporting a government program is not enough to satisfy this intervention requirement—especially because the First Circuit has clearly held that that "perfect identity of motivational interests between the movant-intervenor and the government [is not] necessary to a finding of adequate representation." *Victim Rts. L. Ctr.*, 988 F.3d at 562.

If all of this were not enough, Movants nowhere explain how they would defend the government's administrative actions differently from Defendants. They do not mention additional legal arguments they would present, and they cannot raise any new evidence in this APA case that rises or falls based on the administrative record. *Supra* pp. 1–2. To be sure, the First Circuit has affirmed denial of intervention even where putative intervenors raised new arguments. *E.g.*, *Victim Rts. L. Ctr.*, 988 F.3d at 561; *LBRY*, 26 F.4th at 99–100; *Mass. Food Ass'n*, 197 F.3d at 567. But Movants' abject failure to identify anything new they would offer to this case (apart from a pronouncement of their own financial interest in the Rebate Program) is telling—and near dispositive. *E.g.*, *T-Mobile Ne.*, 969 F.3d at 40 ("[A] court ordinarily may deem an existing party's representation adequate if that party is likely to raise the putative intervenor's preferred arguments and it seems improbable that the putative intervenor will add any missing element.").

Finally, the fact that Defendants previously opposed drug companies' attempts to unilaterally impose *other* rebate programs does not prove that the government will inadequately represent the proposed intervenors here. *Me. Republican Party v. Dunlap*, 2018 WL 2248583, at

---

[9] Moreover, as discussed *supra* pp. 3–4, this is not a case like *Animal Protection Institute* where the proposed intervenors "have private interests at stake, which [they] stand to lose." *Animal Protection Inst. v. Martin*, 241 F.R.D. 66, 70 (D. Me. 2007). Plaintiffs seek to maintain the status quo that has existed for more than 30 years.

*2 (D. Me. May 16, 2018) (rejecting argument that representation may be inadequate because the would-be intervenor and party "are adverse to one another in a related lawsuit"). Defendants and Movants differ in their views on whether drug companies can unilaterally implement 340B rebate programs *without* HHS approval. But Defendants and Movants are now in full agreement that HHS's agency HRSA has the authority to implement this *approved* Rebate Program. Their goals are now the same, and Defendants have made clear that they will vigorously defend their Program and oppose Plaintiffs' requested relief.

For these reasons, Movants' proffered cases are inapposite:

- In *Mosbacher*, the court's concern about inadequate representation arose from the government's decision to not even answer the complaint, but instead to "accept[ a] consent decree which provides for virtually all the relief sought." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *see also Mass. Food Ass'n*, 197 F.3d at 567 (distinguishing *Mosbacher* and noting in that case "the agency had . . . accepted a consent decree providing for virtually all the relief sought and subjecting the [intervening] fishing groups to more stringent rules than had previously been in effect").

- In *Old Orchard Provisions*, the finding of inadequate representation stemmed from the government's refusal to adopt the law that it was tasked with defending (after the law had been enacted anyway through a referendum) and prior attempt to harm the proposed intervenor's interests that another court had enjoined. *Old Orchard Provisions, LLC v. Town of Old Orchard Beach*, 2023 WL 8540917, at *4 (D. Me. Dec. 11, 2023).

- In the cases brought by drug companies concerning HRSA's rejection of their attempts to *unilaterally* impose Rebate Programs, D.C. District Courts allowed intervention because the putative intervenors advanced a different construction of the 340B statute than the

7

existing Defendants. *See, e.g.*, *Johnson & Johnson ("J&J") v. HHS*, No. 1:24-cv-03188, ECF Doc. 50 (D.D.C. May 15, 2025). While the government defendants "believe[d] that [HRSA] has authority to approve a rebate model in some circumstances," the intervenors there argued that the proposed rebate models were "unlawful *per se*, and that HRSA would have no authority to approve any rebate plan." *Id.*, ECF Doc. 14 at 18 (D.D.C. Jan. 30, 2025). The courts granted intervention in light of this concrete conflicting legal argument about the government's authority. *See, e.g.*, *J&J*, ECF Doc. 50 (D.D.C. May 15, 2025); *Sanofi-Aventis U.S. LLC v. HHS*, No. 1:24-cv-03496, ECF Doc. 32 (D.D.C. Mar. 2025).[10]

Courts in the First Circuit "require putative intervenors to produce something more than speculation as to the purported inadequacy of representation." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 475 (1st Cir. 2015) (quotation marks omitted). Movants offer mere speculation. Their Motions for intervention as of right therefore should be denied.

## II. This Court Should Deny Movants' Requests For Permissive Intervention.

Movants alternatively assert that they should be granted permissive intervention under Federal Rule of Civil Procedure 24(b). This Court should deny permissive intervention because introducing five new parties would complicate and delay this action without adding value to the Court's consideration. *See T-Mobile Ne.*, 969 F.3d at 40–41.

Rule 24(b)(3) directs that the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Five entities represented by four sets of counsel have now moved to intervene, raising essentially

---

[10] Notably, the drug company plaintiffs in those cases argued that the government would have been an adequate representative if the proposed intervenors did not present a new argument not pressed by the government. ECF Doc. 26 at 11, No. 1:24-cv-3496 (D.D.C. Feb. 19, 2025). Movants offer no new argument here and are therefore adequately represented on the drug companies' prior reasoning.

identical arguments. Movants note that they have sought to intervene early, but none of them address the practical impacts of their desired intervention. AbbVie Mot. 9–10; AZ Mot. 2; PhRMA Mot. 6–7; NN BI Mot. 10. "Multiplying the number of parties in a case will often lead to delay," *T-Mobile Ne.*, 969 F.3d at 41, and that is certainly true here where the only issue to be decided is whether the agency record shows the government acted arbitrarily and capriciously. Especially in light of Defendants' fast-approaching Program implementation date, "the addition of still more parties would complicate a case that badly need[s] to be expedited." *Daggett*, 172 F.3d at 113; *see Me. Republican Party*, 2018 WL 2248583, at *2 (similar); *Pharm. Res. & Mfrs. of Am. v. Comm'r, Me. Dep't of Hum. Servs.*, 201 F.R.D. 12, 16 (D. Me. 2001) (denying motion to intervene where would-be intervenor's "presence would risk delaying the adjudication").

In addition, "a district court considering requests for permissive intervention should ordinarily give weight to whether the original parties to the action adequately represent the interests of the putative intervenors." *T-Mobile Ne.*, 969 F.3d at 41. All Movants share the same goal as the government, and as explained above, all Movants' interests are adequately represented by the government. *See supra* pp. 4–8. These factors strongly discourage permissive intervention. *See Tutein v. Daley,* 43 F. Supp. 2d 113, 131 (D. Mass. 1999) ("[W]here, as here, intervention as of right is decided based on the government's adequate representation, the case for permissive intervention diminishes or disappears entirely." (internal citation omitted)) (cited with approval in *Me. Republican Party*, 2018 WL 2248583, at *2).

Finally, courts considering permissive intervention may properly consider whether the would-be intervenor will help develop the case. *T-Mobile Ne.*, 969 F.3d at 41. Not one of Movants has advanced an additional legal argument that it will present if permitted to intervene.[11] And

---

[11] This fact distinguishes Movants from the intervenors in *Dinner Table Action v. Schneider*, 2025 WL 604885 (D. Me. Feb. 25, 2025), which AbbVie and PhRMA cite. AbbVie Mot. 9–10; PhRMA Mot. 6. In *Dinner Table Action*, the

Movants cannot fill the many holes in the agency record. *Supra* pp. 1–2. Where, as here, the would-be intervenor's "motion papers did not articulate what, if anything, they would contribute to the vitality of the [government's] defense," permissive intervention is appropriately denied. *T-Mobile Ne.*, 969 F.3d at 41.

## CONCLUSION

This Court should deny all four Motions to Intervene. Plaintiffs continue to consent to Movants being permitted to participate, if they so choose, as *amici curiae*. *See* ECF Doc. 29; *see also*, *e.g.*, *Victim Rts. L. Ctr.*, 988 F.3d at 564 ("the amicus procedure provides sufficient opportunity for [a proposed intervenor] to present their view" where the intervenor is represented by the government); *Mass. Food Ass'n*, 197 F.3d at 567; *Daggett*, 172 F.3d at 113.

Dated: December 15, 2025

Respectfully submitted,

/s/ L. Rush Atkinson
Karen Dunn*
L. Rush Atkinson*
Lyle W. Gruby*
Jenifer N. Hartley**
Tyler T. Mikulis**
**Dunn Isaacson Rhee LLP**
401 9th Street, NW
Washington, DC 20004
(202) 240-2900
kdunn@dirllp.com
ratkinson@dirllp.com
lgruby@dirllp.com
jhartley@dirllp.com
tmikulis@dirllp.com

Melissa A. Hewey
Jennifer S. Riggle
**Drummond Woodsum Attorneys At Law**
84 Marginal Way, Suite 600

---

intervenors identified a specific argument (an originalist defense of the constitutionality of the act at issue) and specific evidence they would present that the defendants had told the court they would not raise. *Id.* at *2.

Portland, ME 04101
(207) 253-0528
mhewey@dwmlaw.com
jriggle@dwmlaw.com

*Admitted pro hac vice.*
\*\*Admitted in NY only; practice supervised by members of D.C. Bar. Admitted pro hac vice.*