UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| THE AMERICAN HOSPITAL ASSOCIATION, et al, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT F. KENNEDY, JR. Secretary of the U.S. Department of Health and Human Services, et al., <br><br> Defendants. | Case No. 2:25-cv-00600-LEW <br><br> **DECLARATION OF CHAD GOLDER IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |

I, Chad Golder, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am the General Counsel and Secretary of the American Hospital Association ("AHA"), which is a non-profit association of healthcare organizations and individuals that are committed to improving the health of their communities. I submit this declaration as a supplement to my declaration executed on November 26, 2025 (ECF Doc. 7), in further support of Plaintiffs' motion for a temporary restraining order or preliminary injunction. The facts in this declaration are based on my personal knowledge and experience, and my review of the AHA's business records.

## Walgreens and Walmart

2.      I understand from 340B program-participating members of the AHA that work with Walgreens and/or Walmart to assist in distributing drugs to patients that both Walgreens and Walmart have decided that they will exclude the drugs approved for the Rebate Program as of January 1, 2026, from their 340B programs. This means that 340B providers that cannot afford to pay the full wholesale acquisition cost (without any discount or rebate) for Imbruvica, Enbrel, Farxiga, Jardiance, Eliquis, Xarelto, Stelara, Januvia, and Novolog/Fiasp will no longer be able to

use Walgreens' or Walmart's pharmacies as a means of dispensing these prescription drugs to patients.

3.    Walgreens informed 340B providers that it was implementing this exclusion because it needs more time to prepare its systems to participate in the Rebate Program, but it did not specify how much additional time it needs.

4.    Walmart provided that it will block all MFP drugs dispensed to patients under Medicare Part D from inclusion under covered entities' 340B Pharmacy Services Agreement with Walmart, effective January 1, 2026.  Walmart identified the "new reimbursement mechanism" and "operational constraints" as motivating its exclusion and did not indicate that its exclusion was temporary.

5.    Without partnerships from community pharmacies like Walgreens and Walmart that distribute drugs to 340B hospitals' patients on an outpatient basis, it will be more difficult for patients to obtain the Rebate Program drugs closer to where they live, which is especially important for rural populations.   These exclusions also increase the administrative burden of Rebate Program participation on covered entities.

**Continued Problems With Beacon Software Platform**

6.    AHA's members themselves also continue to face difficulty preparing their systems to participate in the Rebate Program, as Beacon has continued to change the parameters of what it will consider acceptable information to validate a rebate claim well past November 2, 2025 (the cut off to provide covered entities with 60 days of notice before January 1).  As one AHA member hospital informed me, "[w]e're trying to build" our internal software to meet the acceptable criteria for the Beacon platform, "and the goal post keeps moving."

7.      Defendant HRSA admitted in a brief webinar it held for covered entities on December 4, 2025, that drug companies can deny rebate claims for "other" reasons besides the Maximum Fair Price rebate already being paid or in process (where the Maximum Fair Price is lower than the 340B price) or a duplicate claim for the rebate having been paid to another covered entity. Though HRSA's presentation indicated that drug companies are to provide "documented explanation" for such "other" denials, HRSA has not specified what information or detail this explanation must contain, let alone what 340B hospitals can do to appeal to HRSA when they dispute a denial for that "other" reason (or, for that matter, any reason).



*See 340B Webinar 12-4-2025*, at 12:30, https://www.youtube.com/watch?v=Iw0kxqi74PE.

8.      I have been informed by multiple AHA members that Beacon will not complete data security questionnaires or allow standard vendor assessments related to the security of the data that hospitals are required to submit under the Rebate Program.  Hospitals complete these security assessments to comply with HIPAA Security Rule (45 CFR § 164.308), which provides that covered entities must "conduct an accurate and thorough assessment of the potential risks and vulnerabilities  to  the confidentiality, integrity,  and availability of electronic  protected  health information held by the covered entity or business associate," and further provides that hospitals

3

"may permit a business associate to create, receive, maintain, or transmit electronic protected health information on the covered entity's behalf only if the covered entity obtains satisfactory assurances . . . that the business associate will appropriately safeguard the information."    Because Beacon is refusing to provide this data security information to the AHA's 340B members, and because Defendants have taken the position that HHS "has no legal authority over Beacon" and "cannot compel Beacon to act in a certain manner," *see* Britton Declaration ¶ 44, Beacon is forcing them to either forfeit access to 340B discounts for the drugs included in the Rebate Program or risk violating HIPAA and other data privacy laws.  Notably, contrary to HHS's assertion, *see id*., federal and state data privacy laws provide little protection here because *hospitals* are responsible for their own compliance with HIPAA, and Beacon is making it more difficult for (or preventing) them to do so.

9.    Between Walmart and Walgreens pharmacies refusing to participate in the Rebate Program come January 1, continuing shifts in the information covered entities must provide to have their rebate claims validated by Beacon, the opportunity for drug companies to deny rebates for "other" reasons not enumerated by Defendants (still without any defined HRSA dispute resolution process), and continued data security concerns about the Beacon platform that put 340B hospitals at risk of violating their obligations under HIPAA, the AHA's members face an imminent threat of not only incurring administrative costs and delays in accessing 340B savings, but losing those savings altogether for drugs in the Rebate Program.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 18th day of December, 2025 at Washington, D.C.

Chad Golder

Chad Golder